In affirming the summary judgment granted by the trial court, the majority states at page twelve of its opinion that the record fails to establish a material issue of fact exists for trial because the appellant has failed to set forth any evidence indicating that the safety switches of press number two were disabled on the morning of the accident and that, in fact, the record affirmatively establishes otherwise. Because I do not believe this characterization of the record is true, I must respectfully dissent.
There are several instances of testimony in the record specifically suggesting that the safety or "limit" switches of press number two were bypassed at the time of the accident. At pages 108 109 in the deposition of safety consultant, Gerald Renner, he discusses the fact that the decedent's female co-worker was able to deactivate the stop on press number two in order to release the decedent from the press immediately following the accident:
 Q. Why is that fact significant to you in the opinion you formed?
 A. Well, its significant based on the other things she says. Its important based on the explanation of this accident. In other words, what happened? Why, for instance, did Denes have to turn the motor back on? Well, he had to turn the motor back on because, obviously somebody hit a stop button and stopped it at some point. He did not know when he turned it back on. He could turn it back on, which means the limit switches weren't working. The limit switches didn't turn it off.
 * * *
 Q. If the limit switches were working and they stopped the press from operating, it would still be necessary to turn the press back on by the same start button that he used in the
 A. Except she couldn't turn it back on then. If the limit switch was working, you can't turn it back on. That's why we know the limit switches were bypassed and somebody took the wires off after the accident. You can't do it. When the door's open and switches are working, you can't turn it back on. (Emphasis added.)
And at page 122 of the same deposition:
 Q. You admit that the press on the day of your inspection was not in the same condition that it was in on the day of the accident.
 A. That's correct.
 Q. Did that fact affect any conclusion that you made with regard to your inspection?
 A. No. Except that the gate, the door, and the limit switches were operable on the date of my inspection, obviously. It helped me conclude that they weren't operable on the date of the accident. (Emphasis added.)
Finally, and most striking, safety consultant Gerald Renner concludes his deposition testimony with the following opinion:
 Q. We've sat here now for I don't know four hours listening to your opinions in this case. Are you of the opinion that the sole proximate cause of this accident was the fact that the limit switches were wired closed?
 * * *
 A. Actually, more importantly, the sole proximate cause of this accident was the fact that the plant allowed, on a regular basis, the limit switches to be bypassed, and that these particular ones were. (Emphasis added.)
In my view, the foregoing testimony clearly raises a genuine issue of material fact as to whether the limit switches of press number two were altered in such a way as to proximately cause this accident. Moreover, while other testimony in the record may suggest additional possibilities, I do not believe this other evidence affirmatively establishes any alternate explanation as represented by the majority. Even in suggesting that a stop button on the press may have been manually pushed by the decedent or someone else at the time of the accident, the evidence is equivocal on the issue of a pre-existing limit switch bypass. For example, in the deposition of Yoshio Shiramizu, called in to inspect the press for the manufacturer after the accident and a principal proponent of the manual stop theory — the following exchange takes place at page 16:
 Q. If the press was in the same condition as when you inspected it on May 9th, 1996, isn't it true that the employees could not have caused the press to open and free Mr. Mount unless both of the safety limit switches at the top of the sliding gate were artificially defeated in some fashion?
 * * *
 A. I would think that the machine would not have opened itself, would not have retracted backward unless the switch had been pushed down manually or had been bypassed by hard wiring. (Emphasis added.)
And at page 194 from the same deposition:
 Q. When you were providing your opinions to a reasonable degree of engineering certainty to Mr. Albert earlier, did you indicate that it was most likely or the most likely scenario was that the safety limit switches were wired closed?
 * * *
 A. I think I said the probability was high.
 Q. Would that probability be greater than 50 percent?
 A. Yes. I would say that there's a greater likelihood of that having been done than the limit switches being in their normal state. (Emphasis added.)
Considering the foregoing depositions and the overall record, I fail to see how summary judgment can possibly be appropriate in this case. I would reverse and remand for trial.